SECURITY FINANCE COMPANY v. OZARK HARDWARE
COMPANY.

Opinion delivered January 17, 1927.

1. APPEAL AND ERROR—REFUSAL OF INSTRUCTIONS—SETTING OUT
ENTIRE CHARGE.—It cannot be shown that the error of refusing
instructions requested was ground for reversal where all of the
court's charge is not presented in appellant's abstract or brief.

2. TRIAL—INSTRUCTION IGNORING ISSUES.—In an action on notes, an
instruction ignoring issues raised as to fraud in procuring the
notes, and as to whether the plaintiff-assignee had notice thereof,
held defective.

3. APPEAL AND ERROR—REFUSAL OF INSTRUCTION—HARMLESS ERROR.—
Modification of wholly defective prayers for instruction, though
inaccurate, gave no ground for complaint by the party offering
such instructions, where the modifications did not render the
instructions inherently erroneous.

4. TRIAL—ABSTRACT INSTRUCTION.—An instruction which did not
attempt to apply abstract principles of law stated therein to the
facts of the case was properly refused.

5. TRIAL—ARGUMENTATIVE INSTRUCTION.—In an action on notes by
an assignee, an instruction that the mere fact that plaintiff had
to sue on other notes purchased from the same assignor did not
constitute notice of defense to notes sued on was properly
refused, being argumentative.

6. BILLS AND NOTES—INNOCENT PURCHASER—EVIDENCE.—In an action
on notes, evidence held to sustain finding that plaintiff purchased
the notes with notice that defendant had a good defense.

Appeal from Carroll Circuit Court, Eastern District;
W. A. Dickson, Judge; affirmed.

Joe T. McKinney, for appellant.

Festus O. Butt, for appellee.

WOOD, J.  This action was brought by the appellant
against the appellee in the justice court to recover
judgment on six separate promissory notes, dated
April 22, 1924.  Five of the notes were for the sum of $87
each and one for the sum of $84.26.  The notes were
executed by the appellant in favor of the Brenard Manu-
facturing Company.  They were given in payment for
certain graphophones which, the appellant claims, were
sold and delivered to the appellee by that company.  The
appellant alleged that the notes were later assigned to it

by the Brenard Manufacturing Company for value before maturity, and that it was therefore an innocent purchaser of the notes, and entitled to recover judgment thereon in the aggregate sum of the principal and interest shown to be due on the notes, for which it prayed judgment.

The appellee claimed that it had a good defense to the notes. There was no formal answer filed in either justice or circuit court, but the testimony developed on the trial in the circuit court shows that the appellee predicated its defense on the ground that the notes were executed by the appellee's secretary and treasurer without authority, and through fraud perpetrated by the Brenard Manufacturing Company on him, and that the appellant was not an innocent purchaser for value of the notes. The testimony on behalf of the appellant tended to prove that the Brenard Manufacturing Company, hereafter called the Brenard Company, was a partnership, doing business in Iowa City, Iowa. On April 24, 1924, the appellee signed a printed order, dated at Berryville, Arkansas, which came into the hands of the Brenard Company through the mail on April 25, 1924. The Brenard Company accepted the order. The order was for talking machines, and the company inspected it and approved it, and wrote the appellee a letter to that effect, inclosing an exact copy of appellee's order and the notes which it had signed. The records and printed matter called for in the order were delivered to the American Railway Express Company at Iowa City, Iowa, April 30, 1924, and consigned to the appellee at Berryville, Arkansas. The order was sent in to the Brenard Company by its solicitor, W. E. Howe, a traveling salesman. He was employed by the company to call upon merchants to take orders for the company's line of goods on blanks furnished him for that purpose. He was to send the orders to the Brenard Company at Iowa City, Iowa, for approval, as soon as he procured them. He was instructed by the company not to make any reference or statement other than was contained in the order blank.

The Brenard Company inspected the orders as they came in, and, when found satisfactory, it approved them. The Brenard Company then paid the salesman his commission. When the order was received by the company, there came with it a report of the salesman, in which he said he made no verbal or written agreement in securing the order other than was shown in the original order.

The notes in controversy were executed at the time the order was executed, and were given in settlement of the terms of the order. The Brenard Company detached the notes, as the order provides, and sold them to the appellant for cash, May 31, 1924. The notes were dated April 22, 1924, and were due two, three, four, five and six months after date. None of the notes were due when they were sold to the appellant. The Brenard Company, owning the notes, had no interest in the appellant company which purchased the notes. There was no connection, either direct or indirect, between them. The appellant purchased the notes of the Brenard Company on May 31, 1924, in the total sum of $3,003.52, and gave the Brenard Company its check for same in the sum of $2,600.

There was testimony by the witnesses for the appellant to the effect that the general attorney for the appellant is also the attorney for the Brenard Company, and had his office in the same building with the latter company. The Brenard Company began selling its commercial paper to appellant on August 31, 1923. Up to June 15, 1925, the appellant had purchased of the Brenard Company commercial paper of the total value of forty or fifty thousand dollars. It had purchased several thousand dollars' worth of such paper August 31, 1923, and May 31, 1924. The paper so sold and purchased was similar to the paper in controversy. All these notes had been detached from the contracts before being offered to the appellant. The notes had perforated edges, showing that they had been detached from contracts. On the notes purchased from the Brenard Company between August 31, 1923, and May 31, 1924, the appellant had to

bring a number of suits. The witness stated that he had been a witness for the appellant a dozen times on paper which his firm had sold to the appellant prior to May 31, 1924. The notes on which these actions were brought were given to the Brenard Company for phonographs on agency contracts similar to that in the present case. The notes sold appellant were all taken from the Brenard Company's customers, and were all of the same general form, but for varying amounts. The notes involved had been detached from contracts similar to the notes and contracts the Brenard Company used in dealing with the appellee. The president of the appellant might have known that the notes sued on had been detached from a contract. There was no secret about it. The notes were perforated at the ends and sides, showing that they had been detached from something. The president of the appellant, in his testimony, corroborated the testimony of the manager of the Brenard Company. The appellee had to sue the Brenard Company twenty or thirty times on notes purchased of them. Some of the suits were on paper bought from the Brenard Company prior to May 31, 1924. Those actions were on notes similar in size, design and printed matter to those in controversy. Witness knew the notes had been detached from an order, contract, or other paper; witness knew, when he purchased the notes in controversy, that the Brenard Company was selling phonographs under some agency contract and taking customers' notes therefor. After buying the notes in controversy, appellant did not correspond with the appellee about collecting them. Appellant did not investigate appellee's financial standing; supposed it was good.

The above is substantially the testimony of appellant's own witnesses.

According to the testimony of the secretary of appellee, a representative of the Brenard Company approached witness and represented that he had phonographs for sale with a radio attachment. Appellee is a corporation, and it was not handling phonographs.

Witness had no authority to purchase phonographs. The representative of the Brenard Company stated that he would not expect the appellee to sell them; he only wished to store them with the appellee, with the privilege of demonstrating them; he stated that he would sell them himself, and would refund to appellee the freight it paid on the phonographs. Witness signed one big piece of paper. The Brenard agent represented that it was an acceptance. It was not in the form of notes as they are now. When the shipment of talking machines arrived, the appellee, to save storage charges, let them be brought over and stored in appellee's warehouse, supposing that the Brenard Company's agent would soon show up to begin selling them. Appellee had never uncrated any of them; it did not know what they really were; sent to the Brenard Company a bill for the freight, and they replied that appellee had bought the shipment and had signed notes for them, which would soon be due. Witness wrote, denying that appellee owed the Brenard Company any notes, and stating that appellee would ship the stuff back. The Brenard Company shortly wrote, saying it had sold the notes to some one else, and refused to receive the stuff back. The Brenard Company wrote, in one of its letters, that the shipment was phonographs only, and did not have radio attachments. Appellee had never opened the shipment, and did not try to sell the machines. Two other witnesses for the appellee corroborated the testimony of the above witness.

The appellant presented the following prayer for instruction, which the court refused: "No. 3. You are instructed that, where there is a valid written assignment of a note in a suit by the assignee, the maker of the note cannot question the amount of consideration paid for the assignment; that a *bona fide* holder of a note is not affected by want of consideration between the original parties."

Appellant requested prayer for instruction No. 5, as follows: "You are instructed that, even though you may find from the evidence that the defendant, Ozark

Hardware Company, had a defense as to the Brenard Manufacturing Company, such defense would not affect the plaintiff's right to recover in this case, unless it be shown by proof that the plaintiff, Security Finance Company, knew (or had reason to know) of said defense at the time said notes were assigned to it, and the burden of proof in showing that said plaintiff has such knowledge of equities or defenses is upon the defendant in this action."

The trial court refused to grant prayer for instruction No. 5, but modified same by inserting the words in parentheses.

The appellant also presented prayer for instruction No. 6, which the court refused, but modified, and gave the same as modified by adding the words in parentheses. "No 6. You are further instructed that a *bona fide* purchaser of a note is one who takes the same in due course of business, before maturity, for a valuable consideration, and without knowing (or having reason to know) of any equities or defenses. If you find from the evidence in this action that the plaintiff, the Security Finance Company, is a *bona fide* holder of said notes herein sued on, then, in that event, it is your duty to find for the plaintiff in this action."

Appellant requested prayer for instruction No. 7, as follows, which the court refused: "You are further instructed that the mere fact that the plaintiff in this action may have had to sue on other notes heretofore bought from the Brenard Manufacturing Company does not constitute notice of a defense to the notes herein sued on."

Counsel for appellant, in his brief, complains of the ruling of the court in refusing appellant's prayers for instructions numbered 3 and 7. He also complains that the court erred in not granting his prayers for instructions numbered 5 and 6 as asked, and in modifying and giving the prayers as modified. Counsel for appellee, in his brief, calls attention to the fact that counsel for appellant has not brought into his abstract and brief all

of the instructions that were given by the trial court. Appellant's counsel sets out certain of the instructions by number and comments thereon. These numbers show that the court had given other instructions in the case.

1. We find no reversible error in the rulings of the trial court. Since the appellant's counsel has not presented in his abstract or brief all of the instructions that were given by the court, it is impossible for us to determine whether there was any reversible error in the rulings of the court in granting and refusing prayers by appellant for instructions numbered 3 and 7, and also in the granting of appellee's prayer number 3. For aught we know, the instructions given by the court which are not set out may have presented, as a whole, a correct charge to the jury applicable to the issues raised and the proof in the case, and may have cured all the alleged errors in the rulings of the court of which counsel for appellant complain. *Chicago Mill & Lbr. Co.* v. *Cooper,* 90 Ark. 326-335, 119 S. W. 672. Moreover, we have examined appellant's prayers for instructions numbered 5 and 6. These prayers as originally offered were wholly defective, in that they completely ignored the issue of fraud, and all the testimony adduced by the appellee tending to prove that appellant had notice that the paper purchased by it of the Brenard Company was not issued *bona fide* and that appellee had a good defense thereto. The court, for this reason, might have rejected these prayers outright. The court instead attempted to modify same to embrace this defense. Even though its modification may have been inaccurate, the appellant is in no attitude to complain of the court's ruling, because the prayers offered by it were erroneous, and the modification by the court did not render the prayers wholly and inherently erroneous.

Appellant's prayer for instruction 3 did not attempt to apply the abstract principle of law stated therein to the facts which the testimony tended to prove, and the court, for this reason, did not err in refusing it. Appel-

lant's prayer for instruction number 7 was wholly argumentative, and was therefore properly rejected. There was no specific objection by appellant to any of the prayers.

The jury were warranted in finding from the testimony of the appellee that appellant purchased the notes with notice that appellee had a good defense thereto, and that appellant was not therefore an innocent purchaser thereof. The testimony adduced tending to prove this is fully set forth *supra,* and it could serve no useful purpose to comment upon it.

The judgment is correct, and it is affirmed.